UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| VICTORIA D., | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | )    1:20-cv-00266-GZS |
| | ) |
| KILOLO KIJAKAZI,[1] Acting Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant | ) |

## REPORT AND RECOMMENDED DECISION

On Plaintiff's application for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments but retains the functional capacity to perform substantial gainful activity.  Defendant, therefore, denied Plaintiff's request for disability benefits.  Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

### THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the August 22, 2019 decision of the

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted as the defendant in this matter.

Administrative Law Judge.  (ALJ Decision, ECF No. 11-2).[2]  The ALJ's decision tracks

the familiar five-step sequential evaluation process for analyzing social security disability

claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments

consisting of degenerative disc disease in her cervical and lumbar spine; degenerative joint

disease in her left shoulder, bilateral knees, and bilateral hips; migraine headaches with

vertigo; morbid obesity; depressive disorder; and anxiety disorder.  (R. 18.)  The ALJ

further determined that Plaintiff had a residual functional capacity (RFC) to perform light

work, except she is limited to two hours of standing or walking during a workday; she can

occasionally balance, stoop and climb ramps or stairs, but cannot kneel, crouch, crawl, or

climb ladders, ropes or scaffolds; she can frequently push, pull, reach overhead, and operate

hand controls with her non-dominant left upper extremity; she must avoid unprotected

heights, slippery surfaces, excessive noise, and bright lights; she is limited to performing

simple tasks; she can tolerate only simple change in routine; and she cannot tolerate

interaction with the public.  (R. 22.)

Based on the RFC finding, the ALJ concluded that Plaintiff could not return to past

relevant work, but could perform other substantial gainful activity, including the specific

representative jobs of laundry folder and garment folder.  (R. 31-32.)

### STANDARD OF REVIEW

A court must affirm the administrative decision provided the decision is based on

---

[2] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision
is the ALJ's decision.

the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## DISCUSSION

Plaintiff argues that the ALJ erred (1) by including a limitation on exposure to "excessive noise," (2) by assessing a light work RFC instead of restricting Plaintiff to sedentary work, and (3) by failing to assess properly the vocational evidence.

### A. Noise Exposure

The ALJ determined that Plaintiff should avoid exposure to "excessive noise." (R. 22.) In determining Plaintiff's RFC, the ALJ found the opinions of the state agency medical consultants, Benjamin Weinberg, M.D. and Edward Ringel, M.D., to be persuasive. (R. 30.) As part of their assessment of Plaintiff's environmental limitations, Dr. Weinberg and Dr. Ringel concluded that she should "[a]void even moderate exposure" to noise. (R. 106, 114.) Plaintiff notes that the U.S. Department of Labor's Selected Characteristics of Occupations (SCO) lists five noise intensity levels: very quiet, quiet,

moderate, loud, and very loud.  SCO at App. V(5), D-2.[3]  An "excessive" noise level is not

listed.   Plaintiff, therefore, contends that the ALJ's limitation to avoid exposure to

"excessive noise" is not supportable.

The portion of the assessment form where the consultants note that Plaintiff should

"avoid even moderate exposure" to noise does not represent the consultants' complete

assessment.  The consultants are directed to "discuss any allegations of physical limitations

or factors which can cause physical limitations."  Program Operations Manual System DI

24510.050(C)(1)(d).  A consultant is thus expected to supplement the form with written

explanation of a claimant's limitations.

Dr. Weinberg and Dr. Ringel explained that "[e]xcessive noise and bright light

should be avoided so as not to trigger migraines," and they additionally noted that the

environmental limitations were imposed "to prevent exacerbations" of her migraines.  (R.

106, 114.)  In their written explanations, the consultants directly addressed the level of

noise Plaintiff should avoid.  There is no internal inconsistency in the consultants' opinions

and the ALJ reasonably adopted the noise limitation found by the consultants.  The ALJ's

noise limitation in the RFC, therefore, is supported by substantial evidence.

Plaintiff further asserts that the Dictionary of Occupational Titles (DOT) does not

include an "excessive" noise level and that the vocational expert, Susan Gaudet, did not

address adequately the noise limitation when she identified the representative jobs of

---

[3] SCO provides illustrative examples of a "moderate" level of noise as being present in a business office with typewriters being used, in a department or grocery store, or in a fast-food restaurant during off-hours. *Id*.

laundry folder and garment folder.  Plaintiff failed to raise the potential conflict with the DOT at the hearing (R. 71-74), and Plaintiff's vocational expert, David Meuse, also did not raise the issue in his post-hearing affidavit.  (R. 293-94.)  "[A] claimant waives a claim of failure to identify and resolve a conflict between vocational expert testimony and the DOT unless he or she can show that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance."  *Welch v. Astrue*, No. 1:11-cv-384-GZS, 2012 WL 3113148, at *7 (D. Me. July 11, 2012), *rec. dec. aff'd*, 2012 WL 3113144 (D. Me. July 31, 2012).  Plaintiff has made no such showing.

Even if Plaintiff had preserved the issue, Plaintiff's argument fails.  Ms. Gaudet was aware of the limitation to avoid excessive noise when she identified the representative jobs (*see* R. 69-70) and the record lacks any persuasive evidence to suggest that the jobs are not compatible with the noise limitation.

### B.  Light Work RFC

At the initial and reconsideration stages, the state agency assessed a sedentary RFC for Plaintiff.  (R. 108, 116.)  The ALJ assessed a light work RFC, with significant limitations, including a limitation to two hours of standing or walking during a workday.[4] (R. 22, 30.)  Plaintiff argues the ALJ erred in his RFC assessment because the light work determination is not supported by medical evidence.

Defendant argues and a review of the record suggests that neither Dr. Weinberg nor

---

[4] Dr. Weinberg and Dr. Ringel both also stated that Plaintiff's severe obesity impairment "materially impacts other [medically determinable impairments] … particularly with respect to ambulation and standing."  (R. 106, 114.)

Dr. Ringel, the state agency medical consulting experts, assessed a sedentary RFC.  Rather,

the sedentary determination was apparently made by the disability examiners.  Regardless,

classification of an exertional level in an RFC is an issue reserved to the Commissioner

and not to a state agency.  *Melican v. Saul*, No. 18-cv-682-SM, 2019 WL 4254253, at *2

(D. N.H. Sept. 9, 2019) (citing 20 C.F.R. § 404.1527); *see also Gilson v. Colvin,* No. 1:12-

cv-376-GZS, 2013 WL 5674359, at *2 (D. Me., Oct. 17, 2013) (the question of a claimant's

RFC is "among the issues reserved to the commissioner.") (quoting 20 C.F.R. §

404.1527(d)(2)).

According to Defendant's regulations, the need to stand and walk is "the primary

difference between sedentary and most light jobs."  SSR 83-10, 1983 WL 31251, at *5.

"Relatively few unskilled light jobs are performed in a seated position."  *Id.*  However,

some jobs that qualify as light rather than sedentary require or allow the employee to be

seated most of the time.  Such jobs often involve pushing and pulling controls, which

entails "greater exertion than in sedentary work."  *Id.*  Sedentary work, in turn, involves

"lifting no more than 10 pounds at a time."  *Id.*

Dr. Ringel and Dr. Weinberg both opined that Plaintiff could lift 20 pounds

occasionally and 10 pounds frequently, could stand and/or walk up to two hours in an eight-

hour workday and sit for six hours, occasionally climb ramps and stairs, balance and stoop,

but never climb ladders, ropes or scaffolds or kneel, crouch or crawl.  (R. 105-06, 113-14.)

The ALJ found the opinions of Drs. Weinberg and Ringel persuasive and incorporated their

limitations and others into Plaintiff's RFC.  (R. 22, 30.)  The ALJ's RFC determination,

which provides for light work with limitations on walking and standing, is not internally

inconsistent and is  supported by substantial evidence on the record.

### C. Vocational Evidence

Plaintiff argues that overall, the ALJ did not properly assess the vocational evidence

and thus impermissibly relied on the vocational expert's opinion at step 5, in part because

the expert (Susan Gaudet) did not explain how Plaintiff could perform a light job when

under the RFC, she had to sit for most of the day.

When provided with Plaintiff's RFC, Ms. Gaudet testified that Plaintiff could

perform the jobs of laundry folder[5] and garment folder.[6]  (R. 70.)  SSR 00-4p "imposes an

*affirmative obligation* on [ALJs] to (i) inquire whether there is any conflict between [VE]

---

[5] Under the DOT, a folder

> Folds fluff-dried or pressed laundry, such as shirts, towels, uniforms, and jackets; shakes out, smooths, folds, sorts, and stacks wash according to identification tags.  Inspects pressed laundry for holes or tears, and separates defective articles for transfer to repair department.  Folds laundry, preparatory to wrapping, for delivery to customer.  Folds pressed shirts around cardboard forms and inserts assembly in plastic bags.  May attach missing buttons to articles, using button sewing machine or button attaching machine.  May unload tumbler.  May turn socks, match pairs, and tie socks into bundles.  May be designated according to type of laundry folded as Shirt Folder (laundry & rel.) I; Wearing-Apparel Folder (laundry & rel.)

DOT 369.687-018, 1991 WL 673072.  The DOT listing provides that folders exert up to 20 pounds of force occasionally and/or up to 10 pounds of force frequently and/or a negligible amount of force constantly, so that the position is categorized as light, as opposed to sedentary, work.  (*Id*.)  There is no discussion of the amount of standing or walking required in the position.

[6] A garment folder

> Folds garments for bagging or boxing, following guide marks on table or using folding board (cardboard or metal form).  Secures folds with metal clips.  May insert tissue paper between folds.  May make final inspection of garment.  May pack garments in bags and boxes [PACKAGER, HAND (any industry)].  May be designated according to garment folded as Shirt Folder (garment; knitting).

DOT 789.687-066, 1991 WL 681266.  As with the folder position, the DOT provides that the exertion of force required in the job results in the position being categorized as light work.  (*Id*.)  Similarly, there is no specification of the amount of standing or walking required in the position.

testimony and the [Dictionary of Occupational Titles (U.S. Dept. of Labor 4th ed., rev. 1991) (DOT)], (ii) elicit a reasonable explanation for any apparent conflict, and (iii) resolve said conflict, regardless of how it was identified." *Burton v. Astrue*, No. 2:11-cv-174-GZS, 2012 WL 1184425, at \*4 (D. Me. Apr. 6, 2012), *rec. dec. adopted*, 2012 WL 1415616 (D. Me. Apr. 24, 2012) (emphasis in original). In response to the ALJ's question as to whether her opinion differed from the DOT, Ms. Gaudet explained:

> [T]he DOT doesn't delineate the reach and planes, if you will, whether it's straight ahead, up, down.  They don't discuss the differentiation between the dominant and non-dominant, as well as the positional changes of two hours of standing and walking.  I base my opinion on 33 years of vocational job sustainability.  I've performed – prior to placement, I always perform a job analysis to ensure that the essential duties comport with the – my client's RFC or mental RFC, Your Honor, and that they are not exceeded.

(*Id.*)  The ALJ did not inquire further regarding the standing/walking limitation.

Plaintiff's counsel asked Ms. Gaudet about the effect of absences on employability (R. 71), the differences between laundry and garment folders (R. 72-73), and any changes from the DOT descriptions of the jobs' duties and how the jobs are performed today (R. 73).  Counsel did not ask about how the standing and walking limitation might impact the occupational base.

The Social Security regulations do not require that a claimant be able to perform the full range of work within any one exertional category, and when an ALJ determines that a claimant has a reduced exertional capacity, the regulations advise the ALJ to use a vocational expert to determine the impact the reduced exertional capacity has on the occupational base.  SSR 83-12, 1983 WL 31253.  The Supreme Court noted that when offering such testimony, vocational experts "may invoke not only publicly available

sources but also 'information obtained directly from employers' and data otherwise developed from their own 'experience in job placement or career counseling.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152-53 (2019) (quoting SSR 00-4p, 65 Fed. Reg. 75760 (2000)).   The Court further observed that the sufficiency of the evidence threshold necessary to support an ALJ's factual determinations, including the assessment of vocational expert testimony, "is not high." *Id.* at 1154.

Here, the ALJ consulted a vocational expert and the expert testified that a person with the assessed RFC could perform the identified jobs.  The expert explained how her opinion compared with the DOT and testified to her experience and methodology, which includes meeting with employers to ensure that the jobs she recommends are still being performed as she expects.  (R. 70, 74.)

After the administrative hearing, Plaintiff submitted an affidavit from vocational expert David W. Meuse.  (R. 293-94.)  The ALJ addressed the affidavit as follows:

> While this document has been considered, the undersigned remains unpersuaded by counsel's attempt to refute the validity of evidence provided by the vocational expert at hearing.  First, the undersigned is satisfied with the vocational expert's qualifications and 33 years of experience in the field of vocational rehabilitation and job placement, and notes that counsel did not object to the vocational expert's qualifications…. [T]he vocational expert testified that she ensures consistency between the claimants [RFC] and the jobs provided through her experience working with employers directly and performing job analyses to ensure that essential duties are consistent with an individual's [RFC].   Second, with respect to the numbers of jobs, the vocational expert detailed her sources, specifically SkillTran and Job Browser Pro, as well as her own extensive experience in the field.  In response to questioning from counsel, the vocational expert provided sufficient explanation as to the resources she uses with regard to relevant and accurate statistics.  The undersigned therefore finds that the vocational expert "used established and heretofore reliable methods and data and formed her professional opinions consistent with the methodology utilized by her

contemporaries and other such professionals in relying upon sources, materials, and data that are not subject to further challenge until such time as either Congress of the Courts see fit to change them."

(R. 33, quoting *Babb v. Astrue*, No. 2:10-cv-49-DBH, 2010 WL 5465839, at *4 (D. Me. Dec. 29, 2010).)

Plaintiff argues that under the Supreme Court's holding in *Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951), the ALJ failed to address properly Mr. Meuse's contentions because the ALJ failed to compare the opinions of Mr. Meuse and Ms. Gaudet "point by point." (SOE at 10.) Under *Universal Camera*, a reviewing court must set aside an agency ruling if, in reviewing the entire underlying administrative record, it determines that the ruling is based on findings which are unsupported by substantial evidence. 340 U.S. at 489-90. The "substantiality of evidence must take into account whatever in the record fairly detracts from [an administrative decision's] weight." *Id.* at 488. The First Circuit has explained that an AJL "can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *NLRB v. Beverly Enterprises-Mass., Inc.*, 174 F.3d 13, 26 (1st Cir. 1999); *see also Rodriguez v. Sec'y of Health & Human Servs.*, 915 F.2d 1557, No. 90-1039, 1990 WL 152336, at *1 (1st Cir. 1990) (ALJ under no obligation "to expressly refer to each document in the record, piece-by-piece").

In this case, the ALJ considered the Meuse affidavit, supportably found it unpersuasive, and explained why he relied on Ms. Gaudet's testimony. Nothing more was required. Plaintiff has pointed to no persuasive record evidence or authority to support her contention that the ALJ impermissibly relied on the vocational expert's testimony or failed

to assess properly the vocational evidence.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative

decision.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 17th day of August, 2021.